UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA,    ) Tampa, Florida
                             )
                Plaintiff,  ) No. 8:16-cr-0197-T-35AEP-3
                             )
          vs.           ) December 6, 2016
                             )
RUBEN ALBERTO MONTANO CASTRO, ) 1:30 p.m.
                             )
               Defendant.  ) Courtroom 7A
_____)


**TRANSCRIPT OF SENTENCING HEARING**

BEFORE THE HONORABLE MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

*Official Court Reporter:*

*Scott Gamertsfelder, RMR, FCRR*
*801 North Florida Avenue*
*Tampa, Florida 33602*
*Telephone:  (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

# **A P P E A R A N C E S**

**GOVERNMENT COUNSEL:**

      **Taylor Stout, Assistant U.S. Attorney**
      United States Attorney's Office
      400 North Tampa Street, Suite 3200
      Tampa, Florida 33602
      (813) 274-6000

**DEFENSE COUNSEL:**

      **Grady C. Irvin, Jr., Esq.**
      Irvin Law Firm, LLC
      1207 North Himes Avenue, Suite 4
      Tampa, Florida 33607
      (813) 554-3282

                  **ALSO PRESENT:**

                     Christine Hatten,
                     U.S. Probation Department

                     Yvette Barry, Case Agent

                     Xavier Keogh,
                     Spanish Interpreter

                  - - -

# **P R O C E E D I N G S**

December 6, 2016                                        1:40 p.m.

- - -

(*The oath of the Spanish interpreter administered by the Courtroom Deputy before Court called to order.*)

COURT SECURITY OFFICER:  All rise.

The United States District Court in and for the Middle District of Florida is now in session.  The Honorable Mary S. Scriven presiding.

Please be seated.

THE COURT:  Please call the case.

THE COURTROOM DEPUTY:  In the matter of *United States of America versus Ruben Alberto Montano Castro*, Case No.8:16-cr-0197-T-35AEP-3.

I'll begin by having counsel state their appearance, starting with counsel for the United States.

MR. STOUT:  Taylor Stout for the United States. Good afternoon.

MR. IRVIN:  Good afternoon, Your Honor.  Grady Irvin.  Seated to my left is Ruben Alberto Montano Castro, and the interpreter.

THE COURT:  Good afternoon.  Please swear the defendant.

THE COURTROOM DEPUTY:  Sir, please stand and raise your right hand.

1          Do you solemnly swear or affirm under the

2   penalties of perjury that the answers you shall give will be

3   the truth, the whole truth, and nothing but the truth?

4          THE DEFENDANT:  Yes.

5          THE COURTROOM DEPUTY:  Thank you.  You may be

6   seated.

7          THE COURT:  Mr. Castro, you are under oath and you

8   must give truthful answers to any questions asked and your

9   statements must be truthful.  If you make false statements,

10  you face penalties of perjury, false statements, and

11  obstruction.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  At the same time, it's not my purpose

15  to induce you to give false answers or mislead you.  So if

16  you don't understand what I'm saying to you or if you need a

17  moment to confer with your lawyer, ask for clarification or

18  ask for a chance to speak with counsel.

19         Do you understand that?

20         THE DEFENDANT:  Yes, yes.

21         THE COURT:  Sir, on July 28th, 2016, you pled

22  guilty to Count One of the Indictment, which charged you with

23  conspiracy to possess with intent to distribute 5 kilograms

24  or more of cocaine while onboard a vessel subject to U.S.

25  jurisdiction.

1          The Court has already accepted your guilt to that

2   offense because you pled before the magistrate judge, and

3   it's now the stage in the proceedings where it is my

4   obligation to decide what your sentence will be.  I do that

5   by conferring with you, your lawyer, and counsel for the

6   government, as well as reviewing the material that has been

7   submitted in advance for purposes of sentencing.

8          Mr. Irvin, has the defense had an opportunity to

9   read the presentence report?

10          MR. IRVIN:  Yes, Your Honor.

11          THE COURT:  Any objection to its factual accuracy?

12          MR. IRVIN:  No, Your Honor.

13          THE COURT:  Any objection to the guideline

14   calculations?

15          MR. IRVIN:  No, Your Honor.

16          THE COURT:  Has the government had an opportunity

17   to review the report?

18          MR. STOUT:  Yes, Your Honor.

19          THE COURT:  Any objection to the factual or legal

20   accuracy of the report?

21          MR. STOUT:  No, Your Honor.

22          THE COURT:  Mr. Castillo, has the presentence

23   report been read to you in Spanish in its entirety?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And have you had a chance to discuss

1    the guidelines and how they apply in your case?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And your lawyer has explained to you

4    that there is a mandatory minimum period of imprisonment

5    associated with this crime?

6            THE DEFENDANT:  Yes.

7            THE COURT:  There being no objections to the

8    factual statements and the guideline calculations in the

9    report, the Court adopts those statements as its findings of

10   fact and determines the advisory guidelines to be as follows:

11           This defendant faces a Total Offense Level 33,

12   Criminal History Category I.  Based upon the guidelines, he

13   faces a period of incarceration of between 135 to 168 months,

14   with 120-month minimum mandatory.  There is a five-year

15   period of supervised release that's applicable.  Restitution

16   does not apply, and there is a fine range of between $35,000

17   and $10 million and a $100 special assessment.

18           Sir, the Court has read the sentencing memo just

19   filed.  Do you wish to be heard further with respect to the

20   matter of the 3553 factors, and does your client wish to

21   allocute, as is his right?

22           MR. IRVIN:  Your Honor, very briefly with respect

23   to the arguments.

24           Judge, in addition to what's set forth in the

25   sentencing memorandum -- my apologies getting it to the Court

late.  Judge, he fits all of this criteria.  He's illiterate, he's on the vessel, he has no major role, and the others got minor role.

The Court cannot go beyond the mandatory minimum sentence because of the fact that he was on a vessel on the high seas.  We believe, Judge, that that unfairly discriminates against him because he's not treated like someone who could have the same amount of dope in the United States just because they were here.  He's caught out on the high seas.  Just because it's not enumerated -- just because it's not enumerated here under 3553(f), he's not getting the safety valve; and if anybody should qualify for it, it would be him.

THE COURT:  He pled guilty to this offense and waived his rights to challenge the constitutionality of the charge.

MR. IRVIN:  Yes, Your Honor.  Yes, he did.  He was in the position where he had to plead guilty, but it doesn't stop me from making the argument at least to the Court for purposes of a variance downward, essentially, Judge.

I still find that there is issue with it.  He's waived his right to appeal as well.  You know, still, most of these defendants that come here don't want to go to trial. They want the plea agreement that everybody else has.

They are limited in what they really know about

1 our system. We try to explain it to them as best we can;

2 but, of course, the word around the jail is always, don't

3 fight the government. Plead out. Sign your plea agreement.

4 But, Judge, I still wanted to make that for the

5 record. The Court clearly can comment, if the Court so

6 desires, with respect to the argument that's being made about

7 the inapplicability of the safety valve to him.

8 I know what the case law says, Judge; but, if we

9 argue it in good faith, maybe someday it changes. And I just

10 think this is one of those situations.

11 THE COURT: Thank you.

12 MR. IRVIN: Very brief, Your Honor. Thank you.

13 THE COURT: Does the defendant wish to allocute?

14 THE DEFENDANT: No.

15 MR. IRVIN: Yes, Your Honor.

16 THE COURT: Yes, sir, let me hear from you.

17 THE DEFENDANT: I plead guilty. I plead about

18 everything that I've done. And, if you could, forgive me.

19 THE COURT: Thank you.

20 THE DEFENDANT: Thank you.

21 MR. IRVIN: Judge, may I add one other thing?

22 THE COURT: Yes, sir.

23 MR. IRVIN: Judge, he did debrief when he was

24 supposed to. He did those things. He also met with the

25 agents about it.

1          THE COURT:  Was he the first to debrief?

2          MR. IRVIN:  Judge, I'm not sure if he was or not.

3   He told them from the beginning what he did.

4          THE COURT:  Counsel, was he the first to debrief?

5          MR. IRVIN:  I'm not certain, Your Honor.

6          THE COURT:  I'm asking the government.

7          MR. STOUT:  No, Your Honor, he wasn't the first to

8   debrief.

9          THE COURT:  How soon after the first to debrief

10  was he to debrief?

11         MR. IRVIN:  Your Honor, while she is doing that,

12  he also met with them to tell them whatever -- he just didn't

13  know very much.  I don't think they questioned his veracity

14  about anything.  If he would have known more, he would -- he

15  just doesn't know very much.  I think he was truthful in what

16  he told him.

17         THE COURT:  Thank you.

18         MR. IRVIN:  The others knew a whole lot.

19         MR. STOUT:  Your Honor, according to the agent's

20  notes, this defendant was the third to debrief.  The first

21  defendant debriefed on May 31st.  May 31st.  The second

22  debriefed on August 29th and this defendant debriefed on

23  September the 8th.

24         THE COURT:  And two of the defendants received 5K

25  motions for their debriefing; is that right?

1        MR. STOUT:  That's correct, Your Honor.

2        THE COURT:  Did they give different information

3   than this defendant?

4        MR. STOUT:  They were more forthcoming in their

5   post-arrest interviews and in their debriefings, Your Honor,

6   than this defendant.

7        THE COURT:  Forthcoming in what sense?

8        MR. STOUT:  Specifically in naming who it was that

9   organized the trip and sent them on the trip.

10        THE COURT:  Counsel?

11        MR. IRVIN:  Judge, I don't think he was ever

12   dishonest with them.  He told them what he knew.  He was the

13   bottom man; low on the totem pole.

14        THE COURT:  What did -- the issue is twofold.

15   One, the government typically will only give a 5K1 to one

16   person.  Here, the government has chosen to break that

17   protocol and give the 5K to two people.  Usually it's to the

18   person who debriefs first.  This time it's to the first two

19   people to debrief.  So the notion that the defendant wasn't

20   as forthcoming, in what way wasn't he as forthcoming?

21        MR. STOUT:  Your Honor, he gave false names as to

22   the people who sent him -- in his initial post-arrest

23   interview, he gave false information about who sent him on

24   the trip, which he then in his proffer -- after he signed his

25   proffer and subsequent to the post-arrest interview, he

apologized to the agent and said that I gave you wrong
information that first time around, and I apologize for that,
and then gave different information the second time around.
The other two defendants didn't do that.

THE COURT:  So in his post-arrest statements he
gave one information.  But in the actual debriefing to the
government, he was always honest?

MR. STOUT:  In the one debriefing he gave in the
post-arrest.

THE COURT:  And the other two defendants were
forthright at the beginning of their post-arrest statements?
Didn't give false information?

MR. STOUT:  Your Honor, generally speaking, the
other two defendants were more truthful.

THE COURT:  So, no, they weren't forthcoming
either?  The government just made a decision who they wanted
to give a 5K motion to?

MR. STOUT:  Your Honor, the defendants often in
these cases aren't fully forthcoming -- any of them -- in the
first instance.  The agent's assessment -- and she can speak
to this maybe better than I can because she was there at the
proffers -- is that this defendant was less forthcoming than
the other two.

THE COURT:  Let me hear from her.

In what way?

1          AGENT BARRY:  Good afternoon, Your Honor.  During

2    the post-arrest statements -- and just for the Court's

3    purposes, my name is Yvette Barry.  I'm the agent.

4          THE COURT:  Spell your name for the record.

5          AGENT BARRY:  B-a-r-r-y.

6          THE COURT:  Yes, ma'am.

7          AGENT BARRY:  During the post-arrest statements of

8    all three defendants, the captain was very forthcoming, very

9    truthful from the very beginning, admitted to prior trips

10   that he had conducted.  The interview in and of itself, just

11   the interview report, was seven pages of many details.

12         THE COURT:  None of them false?

13         AGENT BARRY:  None of them false that we know of.

14   Everything was extremely detailed and with names that we had

15   already identified with previous investigations, Your Honor.

16         The second defendant during that post-arrest

17   statement, while he omitted one of the names of the person

18   who hired him --

19         THE COURT:  The second one is which defendant?

20         AGENT BARRY:  Your Honor, that was Robert Alonso

21   Palacios Ortiz.

22         While he did omit the name of the person that

23   hired him, he was still forthcoming about the details

24   surrounding the hiring and the paying and the details, with

25   the dates of when he was hired.

1        Whereas, Mr. Rubin Alberto Montano Castro provided

2  false names of the people who hired him.  He did admit to

3  knowingly being hired for a drug operation; however, he

4  provided fictitious names during the proffer interview.

5        He did apologize.  He started off with apologizing

6  for the fictitious information, and then he provided more

7  information about an a/k/a of the person who hired him.

8        When confronted about those details that he

9  recanted, that part of the information, he stated, I didn't

10  know who this guy was.  I was just approached, and this guy

11  had a bakery by the name of Nando.

12        When confronted as to, well, people don't go

13  around just hiring anyone, he did state, okay, well, I have

14  known him for two years prior.  So he recanted that

15  information.

16        THE COURT:  During the proffer?

17        AGENT BARRY:   Yes, Your Honor.

18        Then also during the proffer, he did admit to

19  having done one other drug operation previously for this

20  individual, Your Honor; and he did identify him in a photo

21  lineup.  But there was a lot of back and forth taking place

22  during that interview for him to be forthcoming.

23        THE COURT:  All right.

24        AGENT BARRY:   Thank you, Your Honor.

25        THE COURT:  Anything further from the government

1  or the defense?

2  MR. IRVIN:  Not from the defense, Your Honor.

3  MR. STOUT:  Your Honor, I'll just point out,

4  again, as far as the 5Ks go, as we discussed with the other

5  two defendants, we viewed their cooperation in both the

6  timing and the substance as roughly equivalent, and the

7  government couldn't really pick between the two as to who to

8  give the 5K to, so we gave it to both of the them.

9  This defendant is differently situated from those

10 both in the substance and timing.  He signed the plea

11 agreement six weeks later than the other two defendants did,

12 in addition to this issue of being forthcoming in his

13 post-arrest interview.  So that's the difference between them

14 on the 5K.

15 As far as the 3553(a) factors, Your Honor is well

16 aware that this offense carries a significant penalty because

17 Congress deems it a very serious offense.  It involves 675

18 kilograms of cocaine.  That could have caused enormous damage

19 had they reached our shores here and is an operation that's

20 international in scope and required the intervention of the

21 U.S. military.

22 For those reasons, I would submit that the low end

23 of the guidelines range is sufficient, but not greater than

24 necessary for the 3553(a) factors.

25 MR. IRVIN:  So it's on the timing issue?

1          Judge, I think I was involved -- I was in a

2   substantial trial.  The government knew there was not going

3   to be a trial and he would be signing the plea agreement.  So

4   some of that is just scheduling issues.  They never had to

5   prepare to bring anybody in for trial.

6          THE COURT:  All right.  Well, as the defense is

7   well aware, the Court cannot force the government to file a

8   motion for 5K reduction on behalf of any defendant.  That

9   decision is left solely to the discretion of the government.

10          The plea agreement sets that forth.  And despite

11  whatever Congress has said about the importance of this crime

12  and the need to bring in the military and so forth, the

13  government sees fit on its own motion to decide who goes to

14  prison for ten years or who goes to prison for five years

15  based upon how fast they get to them and what they say to

16  them.  There is not anything the Court can do about it other

17  than to ensure that the decision is not a decision that is

18  unconstitutional or discriminatory.

19          Insofar as I've been able to tell from the proffer

20  by the government, its decision is not discriminatory or

21  unconstitutional.  It's unfair and it's unfortunate, but it

22  is not discriminatory or unconstitutional, because what I'm

23  hearing is that the second person allocuted a proffer to the

24  government of essentially the same facts as the first and the

25  third defendant.  And on the one hand, one did disclose who

1   the person was who hired him.  On the other hand, the person

2   gave a fictitious name, which is a distinction without a

3   difference, but well within the government's discretion on

4   these matters.

5          I have asked the government to tell me whether its

6   policy of only giving 5K motions to one defendant typically

7   and another one when it chooses is consistent with the

8   national policy or even consistent with other offices in the

9   district and other offices in the circuit, and I still don't

10  have that information.

11         Mr. Stout, do you know?

12         MR. STOUT:  Your Honor, I don't have any specific

13  information to that.  I know that this district and the

14  Southern District of California, I believe, are the two

15  primary districts where these boat cases are prosecuted.  I

16  don't have any information as to the policies or how the

17  cases are handled or prosecuted.

18         THE COURT:  Can you find out for me?  Because

19  there is also these cases prosecuted in the Southern District

20  of Florida and they are also prosecuted, I believe, in the

21  Southern District of New York, based upon where I see the

22  case law emanating.

23         So if you could please get me a survey how they

24  handle 5K motions in those jurisdictions, it would help the

25  Court, because one of the things that the guidelines teach,

1   if they don't teach anything else, is there shouldn't be

2   disparity in sentencing.  And that's not just disparity among

3   people who fall within the authority of one AUSA, but I

4   assume it means disparity in sentencing similar cases all

5   around.

6           I've gotten enough information to know that we are

7   different; and I would like to know, if somebody knows, what

8   the standard is.  And I assume there is no national policy,

9   because then that would be the standard.

10          MR. STOUT:  Yes, Your Honor.

11          THE COURT:  All right.  And to your initial

12  constitutional question, Mr. Irvin, about the decision not to

13  afford the safety valve, there is binding Eleventh Circuit

14  authority that prohibits the Court from considering safety

15  valve in these cases.  And until that is otherwise determined

16  by the Eleventh or the Supreme Court, the Court is duty bound

17  to follow that law.

18          MR. IRVIN:  Yes, Your Honor.

19          THE COURT:  Mr. Montano Castro, all this may seem

20  to be somewhat convoluted and confusing to you, but to be as

21  plain as I can, under our law, when you face this offense,

22  the statute says that the lowest sentence the Court can

23  impose against you is 120 months, which is ten years,

24  essentially.  There is nothing the Court can do about that.

25          Even if this is your only offense, even if this is

your first offense, even if you are minimally a participant in this enterprise, you still have to serve a ten-year period of imprisonment.

Your co-defendants got different sentences because the government decided to give them the benefit of what's called substantial assistance because of the quality and the timing of their cooperation. And even though the cooperation was completed by everyone within a short span of time -- in fact, yours and the one before you, by only nine days -- the government still has made a decision not to give you the benefit of that substantial assistance. In that regard, the Court is limited in what it can do to what the statute mandates. I cannot sentence you to a sentence below 120 months.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Did he say yes or did Mr. Irvin say yes?

MR. IRVIN: He nodded.

THE INTERPRETER: Your Honor, the defendant said Ci. Yes.

THE COURT: Is there anything further in this matter from the defense or the government?

MR. STOUT: No, Your Honor.

MR. IRVIN: No, Your Honor.

1            THE COURT:  Would you please stand, sir.

2            The Court has considered the arguments of the

3    parties, I have reviewed the presentence report, as well as

4    the sentencing memo that was submitted by the defendant, and

5    the co-defendant chart submitted by the office of probation.

6            Pursuant to Title 18, United States Code, Sections

7    3551 and 3553, it is the judgment of this Court that this

8    defendant, Ruben Alberto Montano Castro, is hereby committed

9    to the custody of the Bureau of Prisons, to be incarcerated

10   for a term of 120 months.

11           Upon release from imprisonment, he will serve a

12   five-year term of supervision.  While on supervision, he will

13   comply with the standard conditions adopted by the Middle

14   District of Florida.  In addition, he will comply with the

15   search and special conditions.

16           You may be seated.

17           He will be deported.  He must not re-enter the

18   United States without the appropriate governmental authority

19   giving him permission.  He will participate in the collection

20   of DNA as directed.  The Court waives the drug testing

21   requirements of the VCCA because he will not be actively

22   supervised.  The Court waives a fine.

23           The government has not sought forfeiture.

24           The defendant will pay the special assessment,

25   which is $100, and due immediately and statutorily mandated.

1          Having considered the Advisory Sentencing

2   Guidelines and all the factors identified therein, the Court

3   finds that the sentence is more than sufficient to comply

4   with the statutory purposes of sentencing, but it is

5   statutorily mandated and compelled by law.

6          I have accepted the plea agreement because I am

7   satisfied that it adequately reflects the seriousness of the

8   actual offense behavior and accepting it will not undermine

9   the statutory purposes of sentencing.

10          The defendant has pled to Count One in exchange

11   for dismissal of Count Two, based upon the government's

12   motion.  Is there a motion?

13          MR. STOUT:  Yes, Your Honor.

14          THE COURT:  That motion is granted.  Count Two is

15   dismissed.

16          Does the defendant request special placement?

17          MR. IRVIN:  Your Honor, yes.  We would like to

18   request Jesup or a warm climate for health reasons.

19          THE COURT:  What are the health concerns?

20          MR. IRVIN:  Something happens with him in cold

21   weather.

22          THE COURT:  Is it reflected in the presentence

23   report?

24          MR. IRVIN:  No.  That's something he shared with

25   me, Your Honor.  We will do Jesup and somewhere in a warm

1 climate, by request.  We will leave it at that.

2          THE COURT:  The Court will recommend Jesup for the

3 defendant in order to ensure that he is successful in his

4 matriculation through the system.  I can't direct the BOP to

5 place a person in a certain place, but I can make the

6 recommendation.

7          MR. IRVIN:  Thank you, Your Honor.

8          THE COURT:  The defendant gave up his right to

9 file most appeals that might flow from the charges.  If any

10 remaining right has not been waived, he must appeal within 14

11 days of today's date.  If the government appeals the

12 sentence, that might expand his right of appeal.  He's free

13 to take an appeal with the assistance of a lawyer.  If he

14 cannot afford one and if any remaining right of appeal

15 exists, the Court would appoint an attorney for him.

16          The Court would also direct that a Notice of

17 Appeal can be filed without a fee because the defendant is

18 indigent.  The Court would also note in the judgment that the

19 defendant has been paroled into the United States and is not

20 illegally here, per se; and, therefore, he is entitled to

21 whatever benefits people are entitled to if they are legally

22 in the country.

23          To the extent that this sentence reflects a

24 reduction in the guidelines, it is to ensure, as much as the

25 Court can, that there is no undue disparity in sentencing and

1  to reflect the defendant's relatively minor role in the

2  offenses that occurred in connection with this case and to

3  reflect the defendant's effort, albeit unsuccessful, in

4  attempting to cooperate with the government in connection

5  with this case.

6         Is there any objection to sentencing from the

7  defense?

8         MR. IRVIN:  No, Your Honor.

9         THE COURT:  From the government?

10        MR. STOUT:  No, Your Honor.

11        MR. IRVIN:  Your Honor, would the Court appoint

12  myself if he decides to appeal since I'm CJA already?

13        THE COURT:  Yes, the Court will continue you on

14  your appointment unless you file a motion for leave to

15  withdraw through the appointment and completion of appeal.

16        MR. IRVIN:  Thank you, Your Honor.

17        THE COURT:  If you choose to stop at some point,

18  file a motion.

19        MR. IRVIN:  Yes, Your Honor.

20        THE COURT:  All right.  Thank you.

21        (Proceedings concluded at 2:10 p.m.)

22                   - - -

23

24

25

UNITED STATES DISTRICT COURT   )
                               )
MIDDLE DISTRICT OF FLORIDA     )


# C E R T I F I C A T E

I, Scott N. Gamertsfelder, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript from the stenographic notes taken in the above-entitled matter by the undersigned and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


/S/Scott Gamertsfelder, RMR, FCRR
Official Court Reporter        Date: December 14, 2016

- - -